UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAKOV LITINETSKY, et al., | No. 2:24-cv-03417-DC-SCR |
| Plaintiffs, | |
| v. | ORDER DENYING PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER |
| WEST COAST SERVICING, INC., et al., | |
| Defendants. | (Doc. No. 5) |

This matter came before the court on December 17, 2024 for a hearing on Plaintiffs' *ex parte* application for a temporary restraining order. (Doc. No. 5.) Attorney Jessica Galletta appeared by video on behalf of Plaintiffs Yakov and Maria Litinetsky. Attorney Brian Paino appeared by video on behalf of Defendant West Coast Servicing, Inc. No appearance was made on behalf of Defendant Argent Mortgage Company, L.L.C. For the reasons explained below, Plaintiffs' application for a temporary restraining order will be denied.

**BACKGROUND**

On December 9, 2024, Plaintiffs Yakov and Maria Litinetsky filed this action against Defendants West Coast Servicing, Inc., ("WCS") and Argent Mortgage Company, LLC ("Argent"), alleging various claims arising out of a mortgage loan secured by Plaintiffs' property. In their complaint, Plaintiffs allege as follows.

Plaintiffs primarily reside at and own the property located at 400 Squaw Creek Road,

1  Units 721 and 723, Olympic Valley, CA 96146 (the "property"). (Doc. No. 1 at 6, ¶ 22.) Around
2  October 2005, Plaintiffs obtained financing in the amount of $155,380 from Defendant Argent.
3  (*Id.* at ¶ 23.) The loan was secured by the property. (*Id.*). In 2009, Plaintiffs received a letter from
4  Defendant Argent indicating that their loan had been "charged off." (*Id.* at ¶ 24.) For the
5  following fifteen years, Plaintiffs received no communication regarding the loan or subsequent
6  collection attempts from any entity. (*Id.* at ¶¶ 25, 26.) Plaintiffs understood the charge-off letter
7  and lack of further communication to mean that they owed nothing more and that the loan would
8  not accrue further interest. (*Id.* at ¶ 26.)

9        In August 2024, Defendant WCS recorded a notice of default stating Plaintiffs owed
10 nearly $300,000 and warning that if the loan was not repaid, their property was subject to a
11 foreclosure sale. (*Id.* at 7, ¶ 29.) At this point, Plaintiffs learned that Defendant WCS had begun
12 servicing the loan. (*Id.* at ¶ 27.) On November 24, 2024, Defendant WCS recorded a notice of
13 trustee's sale and indicated it sought a total payment of $442,020 on the loan.[1] (*Id.* at ¶ 30.) A
14 foreclosure sale is currently scheduled to take place on December 18, 2024. (*Id.*)

15       In support of its opposition to Plaintiffs' application for a temporary restraining order,
16 Defendant WCS offers a different version of events regarding the loan's history. Defendant WCS
17 alleges it acquired the servicing rights to the loan from Veripro Solutions, Inc. ("Veripro") on
18 May 31, 2024. (Doc. No. 11 at 3, ¶ 9.) Defendant WCS states that according to its record, Veripro
19 made efforts dating back to March 2013 to reach Plaintiffs via telephone. (*Id.* at ¶ 17.) Defendant
20 WCS also attaches letters that were purportedly sent from Veripro to Plaintiffs informing them
21 that interest would accrue on the loan until the balance was paid in full. (*Id.* at ¶ 18.)

22       Defendant WCS alleges that on or around June 14, 2024, they sent Plaintiffs eight copies

---

[1] Plaintiffs request that the court take judicial notice of the Notice of Default and Notice of Trustee's Sale that were recorded in the Placer County Recorder by Defendant WCS. (Doc. No. 5-4 at 2.) Pursuant to Federal Rules of Evidence 201(b), a court may take judicial notice of a fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). If a fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," it is "not subject to reasonable dispute." Fed. R. Evid. 201(b)(1)–(2). Courts regularly take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Therefore, Plaintiffs' request for judicial notice will be granted.

of Notices of Transfer of Servicing Rights to various addresses associated with Plaintiffs. (*Id.* at ¶ 10.) Defendant WCS states it executed a Substitution of Trustee on August 16, 2024, and appointed ZBS Law, LLP, as the substitute trustee under the Deed of Trust. (*Id.* at 5, ¶ 19.) Defendant WCS further alleges it sent monthly statements each month between July 2024 and November 2024. (*Id.* at ¶ 13.) Defendant WCS asserts that as of November 19, 2024, the total amount due on the loan was $442,020.22. (*Id.* at 4, ¶ 16.) Defendant WCS alleges in early November 2024, it received a "Demand" letter from Plaintiffs dated November 6, 2024, apparently in response to the Notice of Default recorded by Defendant WCS months earlier on August 19, 2024. (*Id.* at 5, ¶ 23.) Defendant WCS asserts that the property in question is used as a rental property, rather than a primary residence. (*Id.* at ¶ 25.)

Plaintiffs now bring the following claims: (1) breach of contract – third party beneficiary against Defendant WCS; (2) breach of implied covenant of good faith and fair dealing against Defendant Argent; (3) violation of 15 U.S.C. § 1692, the Fair Debt Collections Practices Act ("FDCPA") against Defendant WCS; (4) California Civil Code § 2924.17(a) against all Defendants; (5) violation of 12 C.F.R. § 1026.41 against Defendant Argent; and (6) violation of the Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200 *et seq.*, against all Defendants. (Doc. No. 1 at ¶¶ 35–77.)

Plaintiffs' prayer for relief seeks: judgment entered in Plaintiffs' favor and against Defendants; an order requiring Defendants to show cause as to why they should not be enjoined during the pendency of this action; a temporary restraining order, preliminary and permanent injunction; damages, disgorgement, and injunctive relief; compensatory damages, special damages, damages for emotional distress, attorneys' fees and costs; and exemplary damages sufficient to punish and deter future misconduct. (*Id.* at 14.)

On December 11, 2024, Plaintiffs filed the pending *ex parte* application for a temporary restraining order to prevent a foreclosure sale of the property. (Doc. No. 5.) The court subsequently set a briefing schedule and set the matter for a hearing to take place on December 17, 2024. (Doc. No. 8.) Defendant WCS filed their opposition to Plaintiffs' application, a declaration in support thereof, and a request for judicial notice of various exhibits on December

1  13, 2024.[2] (Doc. Nos. 10–12.) On December 16, 2024, Plaintiffs filed their reply thereto.[3] (Doc.
2  No. 14.)

## LEGAL STANDARD

The purpose of a temporary restraining order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these

---

[2] Defendant WCS requests that the court take judicial notice of (1) the property grant deed, recorded in Placer County; (2) various filings from Plaintiffs' Chapter 13 bankruptcy cases; (3) Notice of Default and Election to Sell, recorded in the Placer County Recorder; and (4) a property tax bill issued by Placer County for Plaintiffs' property. (Doc. No. 12.) As noted above, pursuant to Federal Rules of Evidence 201(b), a court may take judicial notice of a fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). If a fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," it is "not subject to reasonable dispute." Fed. R. Evid. 201(b)(1)–(2). Courts regularly take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella*, 442 F.3d at 746 n.6. Therefore, Defendant WCS's request for judicial notice will also be granted.

[3] Plaintiffs filed several objections in response to Defendant WCS's declaration and attached exhibits. (Doc. No. 13.) In deciding whether to issue a temporary restraining order, the court may rely on exhibits, declarations, and affidavits, and the evidence relied upon is not subject to the same evidentiary standard as applied at summary judgment or trial. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Therefore, Plaintiffs objections to Defendant WCS's proffered evidence are denied.

prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," assuming the other two elements of the *Winter* test are met. *Id.* at 1132, 34–35 (citation omitted). Under this "sliding scale" test, "a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131. "Because Plaintiffs seek a mandatory injunction, they 'must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed.'" *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) (citation omitted).

## ANALYSIS

Plaintiffs filed the present application for a temporary restraining order to enjoin the foreclosure sale of the property five business days before the scheduled sale on December 18, 2024.

Pursuant to Eastern District of California Local Rule 231(b), the court "will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." If the court finds that there was "undue delay in seeking injunctive relief" the court may

5

1 deny the requested temporary restraining order on those grounds alone. L.R. 231(b).

2    Here, Defendant WCS recorded the Notice of Default in the Office of the Placer County
3 Recorder on August 19, 2024. (Doc. No. 5-4 at 6.) As Plaintiff's counsel acknowledged at the
4 hearing on the pending application, Plaintiffs would have received the Notice of Default by mail
5 shortly after it was recorded informing them the loan on the property was in default. At the latest,
6 Plaintiffs were aware that the loan on the property was in default since at least November 6, 2024,
7 when Plaintiffs sent Defendant WCS a demand for loan documents and clarifications via mail.
8 (Doc. No. 11-1, at 2.) Indeed, at the December 17, 2024 hearing, Plaintiffs' counsel stated they
9 had no reason to doubt the authenticity of the copy of the demand letter Defendant WCS provided
10 to the court in connection with its opposition to the pending application.

11    Defendant WCS issued a Notice of Trustee's Sale on November 20, 2024, 29 days before
12 the sale was scheduled to take place on December 18, 2024. Despite this, Plaintiffs did not seek a
13 temporary restraining order to enjoin the foreclosure until the afternoon of December 11, 2024,
14 five business days before the sale. If Plaintiffs had valid legal arguments to enjoin the foreclosure
15 sale of the property, they should have promptly raised them upon receiving notice of the sale at
16 the latest. *See Standard v. Wells Fargo Bank, N.A.*, No. 15-cv-1797-PSG-JPR, 2015 WL
17 12696037, at *1 (C.D. Cal. Mar. 18, 2015).

18    In their filings and at the hearing, Plaintiffs did not claim they had inadequate notice of
19 the sale. Plaintiffs also provided no explanation as to the delay in seeking an injunction to prevent
20 the sale. Plaintiffs therefore fail to demonstrate that their considerable delay was excusable.
21 Consequently, the court concludes that Plaintiffs' last-minute application for relief contradicts
22 their allegations that they would suffer irreparable injury if the foreclosure sale is allowed to
23 happen as scheduled. *See Wilkinson v. PHH Mortg. Corp.*, No. 2:24-cv-01416-TLN-AC, 2024
24 WL 2330542, at *3 (E.D. Cal. May 22, 2024) (denying plaintiffs' application for a temporary
25 restraining order solely based on Local Rule 231(b) because plaintiffs waited until four business
26 days prior to the foreclosure sale despite having ample notice of the sale); *Sewell v. Franklin*
27 *Credit Mgmt. Corp.*, No. 2:24-cv-1788-TLN-DB, 2024 WL 3203328, at *2 (E.D. Cal. June 27,
28 2024) (denying plaintiff's application for a temporary restraining order solely based on Local

Rule 231(b) because plaintiff failed to explain why he did not seek injunctive relief prior to a few hours before the foreclosure sale of his property); *Mammoth Specialty Lodging, LLC v. We-Ka-Jassa Inv. Fund, LLC*, No. 10-cv-0864-LKK-JFM, 2010 WL 1539811, at *2 (E.D. Cal. Apr. 16, 2010) (denying plaintiff's application for a temporary restraining order solely based on Local Rule 231(b) because plaintiff did not seek an injunction to prevent the foreclosure sale until four business days prior); *Standard*, 2015 WL 12696037, at *1 (plaintiffs' application for a temporary restraining order denied solely due to dilatory timing because plaintiffs waited until two days before the foreclosure sale to seek an injunction despite having ample notice of the sale); *Fivefold Props. Dunnegan LLC v. Toorak Cap. Partners LLC*, No. 8:24-cv-00958-SVW-JDE, 2024 WL 3009327, at *2 (C.D. Cal. May 7, 2024) (finding the plaintiff delayed in seeking emergency relief where it waited until two days prior to a foreclosure sale to seek an injunction). Because of Plaintiffs' undue delay in seeking injunctive relief without adequate explanation, the court will exercise its discretion to deny Plaintiffs' *ex parte* application for a temporary restraining order. *See* L.R. 231(b).

## CONCLUSION

For the reasons explained above, Plaintiffs' *ex parte* application for a temporary restraining order (Doc. No. 5) is denied.

IT IS SO ORDERED.

Dated:   **December 17, 2024**

Dena Coggins
United States District Judge

7