UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAKOV LITINETSKY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WEST COAST SERVICING INC, et al.,<br><br>Defendants. | No. 2:24-cv-03417-DC-SCR<br><br><u>ORDER DENYING PLAINTIFF'S MOTION<br>FOR A PRELIMINARY INJUNCTION</u><br><br>(Doc. Nos. 27, 34) |

This matter is before the court on Plaintiffs' motion for a preliminary injunction. (Doc. No. 27). Pursuant to Local Rule 230(g), the court finds it appropriate to take the matter under submission to be decided on the papers. Accordingly, the hearing set on the motion for February 21, 2025 is hereby vacated. For the reasons explained below, the court will deny Plaintiffs' motion for a preliminary injunction.

**BACKGROUND**

On December 9, 2024, Plaintiffs Yakov and Maria Litinetsky filed this action against Defendant West Coast Servicing, Inc. ("WCS") and Argent Mortgage Company, LLC ("Argent"), alleging various claims arising out of a loan secured by Plaintiffs' property. (Doc. No. 1.) On December 11, 2024, Plaintiffs filed an *ex parte* application for a temporary restraining order to enjoin Defendant WCS from proceeding with a foreclosure sale that was scheduled to take place on December 18, 2024. (Doc. No. 5.) In an order issued on December 17, 2024, the court denied Plaintiffs' application because they failed to comply with the court's local rules relating to

requests for injunctive relief, specifically Local Rule 231(b)'s timeliness requirements. (Doc. No. 18 at 5–7.) The court exercised its discretion to deny Plaintiff's application for a temporary restraining order "[b]ecause of Plaintiffs' undue delay in seeking injunctive relief without adequate explanation." (*Id.* at 7.)

Plaintiffs filed a first amended complaint ("FAC") on January 6, 2025, adding Veripro Solutions, Inc. ("Veripro") and Nationstar Mortgage, LLC ("Nationstar Mortgage") as defendants, but no longer naming Defendant Argent. (Doc. No. 22.) Plaintiffs bring the following claims in their FAC: (1) breach of contract – third party beneficiary against Defendant WCS and Defendant Veripro; (2) breach of implied covenant of good faith and fair dealing against Defendant Nationstar Mortgage; (3) violation of 15 U.S.C. § 1692, the Fair Debt Collections Practices Act ("FDCPA") against Defendant Veripro; (4) violation of California's Rosenthal Fair Debt Collections Practices Act against Defendant WCS; (5) violation of 12 C.F.R. § 1026.41 against Defendant Nationstar Mortgage; and (6) violation of the Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq.*, against all Defendants. (*Id.*)

In their FAC, Plaintiffs allege as follows. In 2005, Plaintiffs obtained a loan for an original sum of $155,380 from Argent, secured by a deed of trust encumbering the property located at 400 Squaw Creek Road, Units 721 and 723, Olympic Valley, CA 96146 (the "Property"). (Doc. No. 22 at ¶¶ 25, 27.) Plaintiffs own and use the Property as a rental property for income, but at times have resided in it. (Doc. No. 22 at ¶¶ 25–26.) In 2009, Plaintiffs received a letter from Defendant Argent indicating that their loan had been "charged off." (*Id.* at ¶ 28.) For the following fifteen years, Plaintiffs received no communication regarding the loan or subsequent collection attempts from any party. (*Id.* at ¶¶ 29–30.) Plaintiffs understood the letter and lack of further communication to mean that they owed nothing more and that the loan would not accrue further interest. (*Id.* at ¶ 30.)

In August 2024, Defendant WCS recorded a notice of default stating Plaintiffs owed nearly $300,000 and warning that if the loan was not repaid, their property was subject to a foreclosure sale by the trustee, ZPS Law, LLP. (*Id.* at ¶ 32.) Plaintiffs learned around this time that Defendant WCS had begun servicing the loan. (*Id.* at ¶ 27.)

1    On November 20, 2024, Defendant WCS recorded a notice of trustee's sale and indicated
2 they sought a total payment of $442,020.22 on the loan, and that the date of the foreclosure sale
3 was December 18, 2024. (*Id.* at ¶ 37.)

4    Defendant WCS has offered a different version of events regarding the loan's history.
5 (Doc. Nos. 11, 30). Defendant WCS alleges it acquired the servicing rights to the loan from
6 Defendant Veripro on May 31, 2024. (Doc. No. 11 at 3, ¶ 9.) Defendant WCS states that
7 according to its record, Veripro made efforts dating back to March 2013 to reach Plaintiffs via
8 telephone. (*Id.* at 17.) Defendant WCS also attaches to its declaration letters that were purportedly
9 sent from Defendant Veripro to Plaintiffs informing them that interest would accrue on the loan
10 until the balance was paid in full. (*Id.* at 18.)

11    Defendant WCS alleges that on or around June 14, 2024, they sent Plaintiffs eight copies
12 of Notices of Transfer of Servicing Rights to various addresses associated with Plaintiffs. (*Id.* at
13 ¶ 10.) Defendant WCS states it executed a Substitution of Trustee on August 16, 2024, and
14 appointed ZBS Law, LLP, as the substitute trustee under the Deed of Trust. (*Id.* at 5, ¶ 19.)
15 Defendant WCS further alleges it sent monthly statements each month between July 2024 and
16 November 2024. (*Id.* at 13.) Defendant WCS asserts that as of November 19, 2024, the total
17 amount due on the loan was $442,020.22. (*Id.* at 4, ¶ 16.) Defendant WCS alleges it received a
18 "Demand" letter from Plaintiffs in early November 2024, apparently in response to the Notice of
19 Default recorded by Defendant WCS. (*Id.* at 5, ¶ 23.) Defendant WCS also asserts that the
20 Property is used as a rental property, rather than a primary residence. (*Id.* at ¶ 24.) Defendant
21 WCS also alleges that in order to delay Defendant WCS's foreclosure sale, Plaintiffs filed a
22 voluntary petition under Chapter 13 of the Bankruptcy Code on December 18, 2024, which
23 caused the sale date to be rescheduled to January 22, 2025. (Doc. No. 30 at 8.) The bankruptcy
24 court dismissed that petition on January 17, 2025. (*Id.* at 9.) Then Plaintiffs again filed another
25 petition for bankruptcy on January 22, 2025—the rescheduled sale date. (*Id.*)

26    Meanwhile in this action, a few days before the bankruptcy court dismissed their petition
27 and approximately one week before the rescheduled sale date, on January 14, 2025, Plaintiffs
28 filed a motion for a preliminary injunction to prevent a foreclosure sale of the Property, along

3

with a request for judicial notice, noticing the motion for a hearing on February 21, 2025.[1] (Doc. No. 27.) Plaintiffs did not seek at that time to advance the hearing date or otherwise have the motion heard on shortened notice. Defendant WCS filed its opposition to Plaintiffs' motion, as well as a request for judicial notice of its own, on January 28, 2025.[2] (Doc. Nos. 30, 31.) On February 7, 2025, Plaintiffs filed their reply, as well as a second request for judicial notice, thereto.[3] (Doc. No. 14.)

---

[1] Plaintiffs request the court take judicial notice of the Notice of Default and Notice of Trustee's Sale that were recorded in the Office of the Placer County Recorder by Defendant WCS. (Doc. No. 27-3) Plaintiffs also request the court take judicial notice of the Fixed Rate Note entered into by Plaintiffs on October 5, 2005, and the Deed of Trust recorded on October 4, 2005 in the Office of the Placer County Recorder (Doc. No. 33-3.) Pursuant to Federal Rules of Evidence 201(b), a court may take judicial notice of a fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). If a fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," it is "not subject to reasonable dispute." Fed. R. Evid. 201(b)(1)–(2). Courts regularly take judicial notice of matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Therefore, Plaintiffs' request for judicial notice is granted.

[2] Defendant WCS requests the court take judicial notice of the voluntary petition filed by Plaintiffs on December 18, 2024 in the U.S. Bankruptcy Court for the Northern District of California Case. No. 24-30940; the Bankruptcy Court's order in that case granting the debtor's motion to extend time to file required documents; and the order and notice of dismissal entered on January 17, 2025, by the Bankruptcy Court in that case. (Doc. No. 31). Defendant WCS also requests the court take judicial notice of another voluntary petition filed by Plaintiffs on January 22, 2025, in the U.S. Bankruptcy Court for the Northern District of California Case No. 25-30050. (*Id.*). Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Because court filings are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' pleadings filed and orders issued in related litigation are proper subjects of judicial notice under Rule 201." *McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014) (citing *Reyn's Pasta Bella, LLC, Inc.*, 442 F.3d at 746 n. 6 ("We may take judicial notice of court filings and other matters of public record.")). Therefore, Defendant WCS's request for judicial notice is granted.

[3] Plaintiffs filed several objections in response to Defendant WCS's declaration and attached exhibits. (Doc. No. 33-2.) In deciding whether to issue a preliminary injunction, the court may rely on exhibits, declarations, and affidavits, and the evidence relied upon is not subject to the same evidentiary standard as applied at summary judgment or trial. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Therefore, Plaintiffs' objections to Defendant WCS's proffered evidence are denied at this stage in the proceedings.

On February 11, 2025—nearly a month after Plaintiffs filed their motion for a preliminary injunction—Plaintiffs filed an *ex parte* application to advance the hearing because the foreclosure sale of the Property has been rescheduled to February 19, 2025. (Doc. No. 34.) Defendant WCS filed an opposition to Plaintiffs' application and confirmed that February 19, 2025 is the scheduled foreclosure sale date. (Doc. No. 37 at 4, n.9.) In light of the court's decision to take the pending motion under submission on the papers and the court's prompt issuance of this order, the court will deny Plaintiff's *ex parte* application to advance the hearing date as having been rendered moot by this order.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 65, the court has the authority to issue preliminary injunctive relief. An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

A preliminary injunction may issue if a plaintiff establishes that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20. When the nonmovant is the government, the last two *Winter* factors merge. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

The Ninth Circuit has adopted a "sliding-scale approach" where "a stronger showing of one [*Winter*] element may offset a weaker showing of another." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, "'serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. Serious questions "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (citation omitted).

/////

**ANALYSIS**

Plaintiffs seek a preliminary injunction prohibiting Defendant WCS from selling the Property in a trustee sale to maintain the status quo and prevent irreparable harm to Plaintiffs. (Doc. No. 27.)

In order to prevail on their motion, Plaintiffs must demonstrate they are likely to suffer irreparable harm in the absence of preliminary relief. *See Winter*, 555 U.S. at 20. Courts have found that a sale of a primary residence constitutes irreparable harm. *See Campos v. Dyck O'Neal, Inc.*, No. 2:24-cv-01317-KJM-DB, 2024 WL 2941656, at *3 (E.D. Cal. May 10, 2024) (finding sale of plaintiffs' primary residence constituted irreparable harm); *Mcbride v. PHH Mortg. Corp.*, No. 2:23-cv-02242-WBS-DB, 2024 WL 557791, at *2 (E.D. Cal. Feb. 12, 2024) (finding that the foreclosure of plaintiff's home constituted irreparable harm); *McMahon v. JPMorgan Chase Bank, N.A.*, No. 2:16-cv-1459-JAM-KJN, 2016 WL 3637002, at *2 (E.D. Cal. June 29, 2016) (same). "However, where the facts demonstrate the property that is the subject of the foreclosure is not the moving party's primary residence, and merely a rental property, courts have held there is no irreparable injury." *Field v. Genova Cap. Inc.*, No. 2:20-cv-09563-ODW-JC, 2020 WL 6161450, at *3 (C.D. Cal. Oct. 21, 2020) (finding Plaintiffs did not demonstrate foreclosure constituted irreparable harm where the subject property was used for rental income and did not serve as Plaintiffs' primary residence); *see also Vitale v. Wells Fargo Bank Nat'l Ass'n*, No. 5:23-cv-06019-BLF, 2023 WL 8720144, at *2 (N.D. Cal. Dec. 18, 2023) (finding sale of "commercial" property would not constitute irreparable harm); *Khadavi v. Stalgi, Inc.*, No. 2:20-cv-07948-RSWL, 2021 WL 4057526, at *4 (C.D. Cal. Apr. 8, 2021) (finding sale of "investment" property would not constitute irreparable harm); *Aniel v. Aurora Loan Servs. LLC*, No. 3:10-cv-01042-JSW, 2010 WL 963206, at *3 (N.D. Cal. Mar. 16, 2010) (concluding that the plaintiffs did not establish irreparable harm because although the "[rental property] may be unique, [p]laintiffs [were] not in jeopardy of being evicted from their home").

Here, Plaintiffs allege in their FAC that the Property is used as a rental property for "household income"—conceding that the Property is used for rental income—even though they also vaguely allege they have resided at the Property "at various times." (Doc. No. 22 at ¶ 26.)

6

1    Plaintiffs do not allege that the Property is their primary residence.[4] Thus, Plaintiffs have
2 not shown that they would suffer irreparable harm as a result of the sale of the Property. Further,
3 Plaintiffs offer no additional facts nor proffer any argument to suggest that their alleged injury is
4 not compensable through money damages. *See Yamout v. Scapa*, No. 24-cv-8876-SVW-PD, 2024
5 WL 5185324, at *3 (C.D. Cal. Oct. 22, 2024) ("Because the [] Property is an investment property,
6 [p]laintiff stands to suffer "[m]ere financial injury" from foreclosure on the [property]."); *Vitale*,
7 2023 WL 8720144, at *2 (finding the plaintiffs did not demonstrate irreparable injury where they
8 did not offer facts to show that their alleged injury resulting from a foreclosure sale would not be
9 compensable through money damages); *Field*, 2020 WL 6161450, at *3 (C.D. Cal. Oct. 21, 2020)
10 (finding that Plaintiffs' argument that the property could be used as a rental for additional income
11 supported the court's conclusion that a foreclosure sale would result in monetary injury, not
12 irreparable harm). Therefore, the court finds that Plaintiffs have not demonstrated they are likely
13 to suffer irreparable harm if the court does not grant their motion and enjoin the sale of the
14 Property.

15    Moreover, Defendant WCS argues in its opposition to the pending motion that Plaintiffs'
16 assertion of irreparable harm is undermined by their long-standing default and substantial debt.
17 (Doc. No. 30 at 23.) In support of its argument, Defendant WCS cites to decisions in which courts
18 have found that there is no irreparable injury where a plaintiff is not able to afford their property,
19 even if that property is their primary residence. (*Id.*) (citing *Tyson v. TD Servs. Co.*, No. 5:12-cv-
20 03766-HRL, 2016 WL 4140905, at *4 (N.D. Cal. Aug. 4, 2016) (finding plaintiff not entitled to
21 injunctive relief to prevent foreclosure sale of his principal residence because the record showed
22 he had not made a mortgage payment in six years and he was more than $700,000 in arrears)).
23 The court finds Defendant WCS's argument to be persuasive. As reflected in the Notices of
24 Default sent in 2024, Plaintiffs are in substantial debt on the Property and apparently lack the
25 ability to afford the Property. (Doc. Nos. 12-10, 30 at 23.) The court therefore agrees with

---

[4] Notably, in their original complaint, Plaintiffs had alleged that they live at the Property "as their primary residence." (Doc. No. 1 at ¶ 22.) Thus, Plaintiffs' decision to not allege that the Property is their primary residence in their FAC is telling.

1  Defendant WCS that Plaintiffs' substantial debt undercuts their argument that they will be
2  irreparably harmed in the event of a foreclosure sale. *See Tyson*, 2016 WL 4140905, at *4 (N.D.
3  Cal. Aug. 4, 2016); *Alcaraz v. Wachovia Mortg. FSB*, 592 F. Supp. 2d 1296, 1301 (E.D. Cal.
4  2009) (finding foreclosure sale of the plaintiff's home did not alone constitute irreparable harm
5  where the plaintiff "sought a loan beyond her financial means").
6      Because the court finds Plaintiffs fail to establish irreparable harm, the court need not
7  address the remaining *Winter* factors. Indeed, a plaintiff "must demonstrate that it meets all four
8  of the elements of the preliminary injunction test established in *Winter*" in order to justify the
9  issuance of a preliminary injunction. *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir.
10 2011); *see All. for the Wild Rockies*, 632 F.3d at 1135 (holding that even under the sliding scale
11 approach, a plaintiff must still show a likelihood of irreparable injury). Plaintiffs have failed to
12 meet their burden in demonstrating they will suffer irreparable harm if Defendant WCS is not
13 enjoined from selling the Property. Therefore, the court will deny Plaintiffs' motion for
14 preliminary injunction.

**CONCLUSION**

For the reasons explained above,

1.  Plaintiffs' motion for a preliminary injunction (Doc. No. 27) is DENIED; and
2.  Plaintiffs' *ex parte* application to advance the hearing date on Plaintiffs' motion for a preliminary injunction (Doc. No. 34) is DENIED as having been rendered moot by this order.

IT IS SO ORDERED.

Dated:  **February 18, 2025**

Dena Coggins
United States District Judge

8